

1    Eric D. Goldberg (Bar No. 157544)
     Christine M. Pajak (Bar No. 217173)
2    STUTMAN, TREISTER & GLATT
     PROFESSIONAL CORPORATION
3    1901 Avenue of the Stars, 12th Floor
     Los Angeles, California 90067
4    Telephone: (310) 228-5600
     Facsimile: (310) 228-5788
5
     Joseph G. Minias (*pro hac vice* to be filed)
6    Jennifer J. Hardy (*pro hac vice* to be filed)
     Norman P. Ostrove (*pro hac vice* to be filed)
7    WILLKIE FARR & GALLAGHER LLP
     787 Seventh Avenue
8    New York, New York 10019
     Telephone: (212) 728-8000
9    Facsimile: (212) 728-8111

10   *Attorneys for Plaintiffs*



FILED
CLERK, U.S. DISTRICT COURT

DEC 17 2013

CE... ...STRICT OF CALIFORNIA
DEPUTY

11
## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

12

13   BOWERY OPPORTUNITY FUND,
     L.P.; BOWERY INSTITUTIONAL
     OPPORTUNITY FUND, L.P.;
14   PHOENIX CLO I LTD.; PHOENIX
     CLO II LTD.; PHOENIX CLO III
15   LTD.; DSTAR LTD.; NAPIER PARK
     DISTRESSED DEBT OPPORTUNITY
16   MASTER FUND LTD.; TELOS CLO
     2006-1, LTD.; AND TELOS CLO
17   2007-2, LTD.,

18              Plaintiffs,

19      v.

20   D. STEPHEN SORENSEN, an
     individual,
21
             Defendant.

Case No. **CV13-09275**~JEM

COMPLAINT FOR:

BREACH OF FIDUCIARY DUTY

DEMAND FOR JURY TRIAL

22

23       Plaintiffs, Bowery Opportunity Fund, L.P. and Bowery Institutional

24   Opportunity Fund, L.P. (together, the "<u>Bowery Funds</u>"), DStar Ltd. and Napier

25   Park Distressed Debt Opportunity Master Fund Ltd. (the "<u>Napier Funds</u>"), Phoenix

26

27

28

578825v1

CLO I Ltd., Phoenix CLO II Ltd., and Phoenix CLO III Ltd. (together, the "Phoenix Funds"), and Telos CLO 2006-1, Ltd. and Telos CLO 2007-2, Ltd. (together, the "Telos Funds") (collectively, the "Plaintiffs"), are all holders of first lien debt issued pursuant to that certain First Lien Credit and Guaranty Agreement, dated July 12, 2007, as amended, and Plaintiffs have all suffered losses as a result of multiple breaches of fiduciary duty, described in this Complaint, committed by Defendant, D. Stephen Sorensen ("Sorensen" or the "Defendant").   Plaintiffs allege, on information and belief as to all matters outside of Plaintiffs' personal knowledge, as follows:

## PRELIMINARY STATEMENT

1.     Since at least 2007, Sorensen, who is the Chief Executive Officer ("CEO") and Chairman of the Board of Directors of Koosharem Corp. ("Koosharem" or "Company") has operated Koosharem as his own personal piggy bank, enriching himself and his family with questionable loans and sweetheart deals, to the detriment of Plaintiffs and other creditors.  Koosharem is now, and has been for many years, insolvent, and, during such time, Sorensen owed and continues to owe a duty to the Plaintiffs and other creditors not to divert, dissipate, or unduly risk corporate assets that might otherwise be used to pay creditors' claims, including by self-dealing or giving preferential treatment to certain junior creditors and insiders.

2.     Rather than manage Koosharem as required under California law, Sorensen has managed the Company into the ground.   Under Sorensen's stewardship, the Company was sued by the California State Compensation Insurance Fund (the "State Fund") for defrauding the State Fund, and later as part of a RICO lawsuit for transferring approximately $80 million from the Company to entities controlled by him.  The insurance fraud action ultimately resulted in a $50

- 2 -

million jury award in favor of the State Fund.

3.     Under Sorensen's "leadership," the Company has performed abysmally, has been poorly managed, and has failed to pay its debts as they become due.  The Company has been in default of its borrowings for several years stretching back to 2010 when it failed to provide audited financials for fiscal year ended December 27, 2009.  In March of this year, the Company disclosed that its compliance officer had allegedly embezzled approximately $750,000 from the Company.  The Company has also failed to make certain interest payments due and owing to Second Lien Lenders this year.  In addition, First Lien Lenders were not paid either a $1.05 million amortization payment in September, 2013, or a $9.8 million interest payment in October, 2013.  The Company is a textbook example of bad management ruining a good business.

4.     The Company is currently at a crossroads.  Faced with defaulted debt, potential additional liabilities and suspect business practices, as well as deteriorating performance, the right path forward is to commence a chapter 11 proceeding and put the company up for sale to the highest bidder.  Despite all of its problems, the Company has multiple suitors, including one that is looking to acquire it and combine it with another staffing company.  Plaintiffs believe this bidder is ready, willing, and able, to move forward as soon as the Company provides it with the necessary diligence and puts itself up for sale in a chapter 11 proceeding.  This bidder has offered to pay enough for the Company to fully satisfy Plaintiffs and other First Lien Lenders in full in cash.

5.     Rather than maximize value for creditors to whom Sorensen owes fiduciary duties, Sorensen has refused to permit the bidder to conduct the necessary diligence, and has refused to commence a chapter 11 proceeding to put the company up for sale to the highest bidder.  Sorensen has instead favored a

- 3 -

restructuring proposal by Anchorage Capital ("Anchorage") and Blue Mountain Capital ("Blue Mountain"), which would pay Plaintiffs and other First Lien Lenders just 80% of their claims in cash, as well as rights to purchase equity in reorganized Koosharem with a value that is uncertain (but in any event, the total recovery to Plaintiffs on their claims will be far less than 100%). Junior creditors, however, including Second Lien Lenders (which debt is predominantly owned by Anchorage and Blue Mountain), are to receive substantial recoveries, and unsecured creditors are to be paid in full. Sorensen, for his part, is to receive a lucrative compensation package, remain CEO, *and* receive equity in the Company. Sorensen's proposed compensation will include a generous base salary, lucrative bonuses, *and* restricted stock and stock options. In addition to the aforementioned lucrative financial package Sorensen negotiated for himself, certain notes in favor of entities related to Sorensen will be paid out, Sorensen will be given the option to participate in a rights offering for the Company's equity, and Sorensen will receive equity in the Company on account of his contribution of certain businesses to the Company.

6. Sorensen has advised Plaintiffs that they need to sign on to the Anchorage and Blue Mountain proposal, which will be implemented in a chapter 11 pre-packaged bankruptcy that is designed to be in and out of chapter 11 in 60 days or less, or the Company will stay out of chapter 11 for as long as it possibly can. Sorensen's motives, and corresponding breach of his fiduciary duty to Plaintiffs and other creditors, are easily understood—he will only support a chapter 11 path that virtually guarantees no judicial scrutiny of his serial misdeeds, one that will enrich him and other insiders, and that will keep him at the Company's helm. Which is to say the following:

- 4 -

578825v1

- The Anchorage and Blue Mountain proposal, if it has the support of Plaintiffs, will be very difficult to derail by an objecting party in chapter 11, including any party seeking to compel the Company to commence a sale of itself.

- The Anchorage and Blue Mountain proposal, if it has the support of Plaintiffs, will likely pay unsecured creditors in full, which means there will be no guaranteed court-appointed unsecured creditors' committee to investigate Sorensen and his wrongdoings.

- The Anchorage and Blue Mountain proposal, if it has the support of Plaintiffs, will almost certainly provide for the release of any claim that any creditor or party in interest has against Sorensen and other insiders, which will cleanse his prior misconduct.

7. Against this backdrop, it is easy to see why Sorensen has clung to the Anchorage and Blue Mountain proposal, even though that proposal has no committed financing as of today and Plaintiffs have advised Sorensen and the Company they have no intention of ever supporting it without material changes. Although Sorensen's self-interested motives are easily understood, they are nonetheless improper and his actions constitute a breach of fiduciary duty to Plaintiffs. The value-maximizing strategy for the Company's creditors is for the Company to commence a chapter 11 case and put itself up for sale. Similarly, there is little doubt that staying out of chapter 11 with no viable strategy to address the Company's operational and economic challenges puts the Company's assets at serious risk—assets which should be preserved and maximized to pay creditors' claims.

8. Sorensen, quite simply, is playing a game of chicken with Plaintiffs.

- 5 -

Sorensen's blatant disregard of his fiduciary duties has presented Plaintiffs with a Hobson's Choice—i.e. sign on to a proposal that improperly diverts assets to junior creditors and does not pay Plaintiffs in full, a proposal that whitewashes known and unknown insider-misconduct, or the Company will stay out of chapter 11 for as long as it can, with no sale process to go forward, all while assets are put at serious risk and will substantially decrease in value.

9. Sorensen's course of conduct cannot be excused. Plaintiffs bring this lawsuit to obtain compensation for Sorensen's unlawful activity and to put the Company back on a path toward financial stability that benefits all stakeholders, not just Sorensen and his insider cronies.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), because the amount in  controversy exceeds $75,000.00, exclusive of interest and costs, and Plaintiffs and Defendant are citizens of, and domiciled in, different states.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this district and because the events giving rise to this complaint occurred in this district.

## THE PARTIES

12. The Bowery Funds are, and at all relevant times were, investment funds managed by Bowery Investment Management, LLC, an entity organized and existing pursuant to the laws of the State of New York, with its principal place of business located in New York, New York. The Bowery Funds are each organized and existing pursuant to the laws of the State of Delaware.

13. The Napier Funds are, and at all relevant times were, investment funds organized and existing pursuant to the laws of the Cayman Islands, with their

- 6 -

578825v1

principal place of business located in New York, New York.

14.    The Phoenix Funds are, and at all relevant times were, investment funds organized and existing pursuant to the laws of the Cayman Islands, with their principal place of business located in Scottsdale, Arizona.

15.    The Telos Funds are, and at all relevant times were, investment funds organized and existing pursuant to the laws of the Cayman Islands, with their principal place of business located in New York, New York.

16.    Plaintiffs are certain holders of first lien debt issued pursuant to that certain First Lien Credit and Guaranty Agreement, dated July 12, 2007, as amended.

17.    Sorensen is, and at all relevant times was, the Chairman of the Board of Directors and CEO of Koosharem, a corporation organized pursuant to the laws of the State of California, with its principal place of business located in Santa Barbara, California.   Sorensen is an individual and a resident of the State of California.

## FACTUAL BACKGROUND

### I.    KOOSHAREM AND SORENSEN.

18.    Koosharem was established in 1989.  It is a provider of temporary and permanent staffing in various industries, including trucking, accounting and finance, and software engineering.

19.    After marrying the founder's daughter, Sorensen began working for Select Temporaries Inc. in 1987 which later merged with Koosharem in 2000.  In January 2007, Sorensen began serving as Chairman and CEO of the Company.

20.    Sorensen has operated the Company for his and his family's personal benefit.  As just one example, Sorensen was sued by the State Fund for transferring in 2007 approximately $80 million from the Company to entities controlled by

- 7 -

578825v1

him.   This example is just the tip of the iceberg of Sorensen's misdeeds, which explains his desire to avoid an open and fair sale process in chapter 11—i.e. to limit any judicial scrutiny of his actions.

21.     It also bears noting that, aside from siphoning off cash proceeds for his personal benefit, Sorensen has also been alleged by the State Fund to have committed fraudulent acts.   In a lawsuit filed in 2007, the State Fund alleged that Koosharem entities purposefully provided the State Fund with fraudulent and misleading information in order to obtain workers' compensation insurance for a lower premium.   In 2011, a jury found in favor of the State Fund on these insurance fraud claims in the amount of approximately $50 million.

22.     When the Company did not pay the judgment, the State Fund instituted the aforementioned RICO action against, among others, Sorensen and the Company, alleging the insurance fraud as well as the $80 million fraudulent transfer discussed above as predicate acts.   The actions were settled for an undisclosed amount.

## II.     KOOSHAREM IS INSOLVENT.

23.     On July 12, 2007, Koosharem and certain of its subsidiaries entered into a three-hundred million dollar ($300,000,000) senior secured first lien credit facility with various lenders which included, among others, Plaintiffs (collectively, the "First Lien Lenders"), and a one-hundred million dollar ($100,000,000) second lien credit facility with various second lien lenders (the "Second Lien Lenders" and collectively with the First Lien Lender, the "Lenders").

24.     However, by 2008, due to mismanagement, Koosharem needed to restructure and/or merge with another company in order to retire Koosharem's debt and raise money for operating expenses.   Thus, in 2009, Koosharem entered into a merger agreement with Atlas Acquisition Holdings Corp. ("Atlas").   Under the

- 8 -

578825v1

terms of the merger agreement, Koosharem's shareholders were to receive 24,700,000 shares of Atlas, or 42.5% of the combined company and certain of the Second Lien Lenders were to receive securities convertible up to 13.4% of the combined company.  As part of the transaction, Koosharem was to retire approximately $200 million in total debt.  This would have allowed Koosharem to pay down its senior debt and enable it to reduce ongoing cash requirements.  However, at a special meeting of stockholders held on or around February 12, 2010, the merger was voted down.  As a result, Koosharem was unable to retire its debt and continued to limp along financially.

25.     After the failed merger, Koosharem continued to experience cash flow and liquidity problems.  As a result, in early 2010, Koosharem negotiated a new liquidity facility with its First Lien Lenders to meet ongoing operating expenses.  Yet only six months later, Koosharem was forced to enter into restructuring negotiations with its Lenders after going into technical default for failing to provide audited financials for fiscal year ended December 27, 2009.  Restructuring negotiations have been on-going since, with the Company barely scraping by financially.

26.     Then, in March 2013, during an update call with its Lenders, management disclosed that the Company's compliance officer had embezzled approximately $750,000 from the Company.

27.     As 2013 progressed, the Company's financial problems only worsened.  The Company failed to make interest payments to Second Lien Lenders.  Also, in September 2013, the Company failed to make $1.05 million amortization payment to its First Lien Lenders.  Then, in mid-October 2013, the Company failed to make an $9.8 million interest payment to its First Lien Lenders.  As such, the Company is currently in default of the credit agreements governing

578825v1

both its first lien and second lien facilities.

28.     Around the same time, the Company revealed that its workers' compensation expenses had increased, in part, due to higher premiums charged by its insurance carrier in light of the Company's precarious financial situation.  The increased expenses are expected to dramatically reduce earnings, dropping 2013 EBITDA significantly to $80 million or less.

29.     Further, the settlement with the State Fund arising out of Sorensen's and the Company's insurance fraud and alleged fraudulent transfers remains unpaid.   And finally, upon information and belief, the Company is currently accruing significant additional unpaid obligations.   However, the Plaintiffs understand that, while the Company is not paying its secured Lenders, the Company *is* paying certain unsecured creditors on a preferential basis.

30.     In short, the Company is not meeting its financial obligations as they come due and is, and has been for years, insolvent.

### III.     THE PROPOSED RESTRUCTURINGS

31.     After three years of restructuring negotiations, including an attempted sale process, the Company has been unable or unwilling to negotiate a solution to its financial woes that is value maximizing to anyone other than Sorensen and other insiders.

32.     By summer of 2013, the Company was left with two restructuring proposals:  a bid by the investment firm Avenue Capital ("Avenue") and a bid by a consortium led by Sorensen.  Avenue offered $560 million, financed by $210 million in cash and $350 million of new debt.  Sorensen's plan valued the Company at $675 to $680 million, financed by approximately $135–$140 million in equity and debt of approximately $450 million.  Both bids contemplated a full recovery for the First Lien Lenders and limited recovery for Second Lien Lenders.

- 10 -

33. However, in June 2013, Sorensen's consortium unexpectedly withdrew its proposal, leaving Avenue's offer as the only remaining bid.

34. In July 2013, Avenue submitted a second bid that valued the Company at $672 million and contemplated executing the acquisition in connection with the purchase of the Company's competitor, EmployBridge, to form a combined company. This proposed transaction anticipated a 95.7% recovery for First Lien Lenders and a 24.4% recovery for Second Lien Lenders. Specifically, this deal offered First Lien Lenders a cash payment and approximately $30 million of "take-back paper," or seller financing, while Second Liens Lenders would receive 6% of the equity and approximately $10 million of take-back paper. Additionally, both First and Second Lien Lenders would be permitted to co-invest up to $50 million each in equity in the new company.

35. In August 2013, Avenue submitted a revised proposal. The new proposal included *full cash recovery for First Lien Lenders* while Second Lien Lenders would recover 23.4%, split between approximately $20 million of take-back paper and cash. Under this proposal, the Company's capital structure would include $180 million of equity, a new $365 million senior note, and a $30 million revolver. As part of this proposal, Avenue contemplates purchasing the Company through a section 363 sale under the Bankruptcy Code. Avenue has obtained committed financing for this proposal from Deutsche Bank, Jefferies Group and Macquarie.

36. In September 2013, Anchorage and Blue Mountain, two of the Company's First Lien Lenders, submitted an alternative restructuring plan with the backing of Sorensen. Under the proposal, First Lien Lenders would collect an *80% cash recovery* with the right to participate pro rata in $150 million of a $200 million rights offering, *with $50 million of the offering reserved for Anchorage and*

- 11 -

*Blue Mountain*.  Second Lien Lenders would receive 10% of their claims paid in cash, plus warrants for 10% of the equity of the restructured company at a strike price of 35% higher than the Company's value at the closing of the restructuring. The proposal also contemplates that unsecured creditors would receive a full recovery.  This proposal also provides for a new $75 million asset-based revolver and $350 million term loan.

37.     Sorensen has also struck a sweetheart deal with Anchorage and Blue Mountain.  Pursuant to their proposal, Sorensen would keep his position as CEO, remain on the Board of Directors, and receive a generous base salary and lucrative bonuses.   Moreover, the Anchorage/Blue Mountain deal contemplates several perks for Sorensen including payment of certain notes in favor of entities related to Sorensen, options for Sorensen to purchase a certain amount of the Company's common equity at the rights offering price, and Sorensen's receipt of common equity in the Company for his contribution of certain businesses to the Company.

38.     Anchorage and Blue Mountain have not yet obtained committed financing to consummate their proposed transaction, and Plaintiffs do not believe adequate financing will be forthcoming.

39.     Sorensen has advised Plaintiffs that they need to sign on to the Anchorage and Blue Mountain proposal, which will be implemented in a chapter 11 pre-packaged bankruptcy that is designed to be in and out of chapter 11 in 60 days or less, or else the Company will stay out of chapter 11 for as long as it possibly can.  This chapter 11 path would virtually guarantee no judicial scrutiny of Sorensen's serial misdeeds, and will enrich him and other insiders, while keeping Sorensen at the Company's helm.

40.     Thus, Sorensen supports the diversion of value from the Lenders to other creditors in order to avoid having to answer for his questionable business

- 12 -

activities, such as potential conflicted and/or insider transactions, all of which may be the tip of the iceberg.  A creditors' committee in a non-prepackaged chapter 11 process would certainly be interested in further investigating these transactions.

41.     Indeed, Sorensen's desire to avoid the disinfecting sunlight of a creditors' committee investigation is such that, in October 2013, he went so far as to state on a call with the First Lien Lenders that the Company would not file for bankruptcy—something that any reasonable person would agree is necessary given the circumstances—in the absence of a prepackaged deal, which would shield Sorensen from scrutiny.

42.     Sorensen has every incentive not to allow the Avenue proposal to go through, even though it contemplates the greatest return for the Company's creditors, the very entities to whom Sorensen owes fiduciary duties.  Sorensen's antagonistic approach to the Avenue transaction is apparent from the Company's refusal to even provide fulsome due diligence materials to Avenue.   In fact, Avenue—which has provided a serious offer for the Company—has received only a single diligence document in the last month, while the Company remains otherwise openly accessible to Anchorage and Blue Mountain.  Stated otherwise, Sorensen and the Company have purposely shut out Avenue from the bidding and restructuring process in an attempt to ensure that the Anchorage/Blue Mountain proposal gains favorable treatment.

43.     But it should be obvious to Sorensen and the Company that the Anchorage/Blue Mountain proposal as it currently stands does not and will not have the support of Plaintiffs.  In early October 2013, this fact became abundantly clear when the votes in favor of the Company's restructuring support agreement were tallied, and failed to receive the requisite amount of votes.  A majority of lenders are needed because the proposal impairs First Lien Lenders and only

- 13 -

provides an 80% cash recovery and non-transferable rights to purchase equity in reorganized Koosharem (with total recovery is far less than a 100% recovery). No vote by First Lien Lenders is necessary for Avenue's competing proposal because it provides for full recovery to such creditors.

44.    Thus, throughout this restructuring process, Sorensen has thrown his support behind the proposal that is financially beneficial to him, which keeps him in control of the Company that he has mismanaged, and which would reduce scrutiny of his past activities, even though it pays the Company's First Lien Lenders less than a competing proposal, does not command a majority of the Company's creditors support, and lacks committed financing. This is because:

- The Anchorage and Blue Mountain proposal, if it has the support of Plaintiffs, will be very difficult to derail by an objecting party in chapter 11, including any party seeking to compel the Company to commence a sale of itself.

- The Anchorage and Blue Mountain proposal, if it has the support of Plaintiffs, will likely pay unsecured creditors in full, which means there will be no guaranteed court-appointed unsecured creditors' committee to investigate Sorensen and his wrongdoings.

- The Anchorage and Blue Mountain proposal, if it has the support of Plaintiffs, will almost certainly provide for the release of any claim that any creditor or party in interest has against Sorensen and other insiders, which will cleanse his prior misconduct.

45.    In the face of the Company's default on significant principal and interest payments due under its first and second lien credit agreements, and instead

- 14 -

of focusing on his duties as Chairman and CEO to improve the financial viability of Koosharem, Sorensen is more focused on ensuring that the restructuring process adds to his financial gain, and is structured in a way that allows him to avoid scrutiny for past acts, all to the detriment of other of Koosharem's stakeholders, to whom Sorensen owes fiduciary duties.

## COUNT ONE
### (Breach of Fiduciary Duty)

46.     The Plaintiffs repeat and reallege, as if set forth herein, the allegations of all of the preceding paragraphs

47.     At all relevant times Sorensen was an officer and director of Koosharem.   Sorensen had effective control of Koosharem at the time of all matters described above.

48.     Upon information and belief, at all relevant times, including at the time of (i) the embezzlement of $750,000 in cash from the Company, (ii) Sorensen's preferential payment of certain unsecured creditors at the expense of the Plaintiffs, and (iii) Sorensen's negotiation of a restructuring favorable to himself and certain unsecured creditors at the Plaintiff's expense, Koosharem was actually insolvent.

49.     Under the trust fund doctrine and *Berg & Berg Enterprises, LLC v. Boyle,* 178 Cal. App. 4th 1020 (2009), all directors, officers, and managers of Koosharem owed fiduciary duties to the Plaintiffs.   Specifically, Sorensen owes Plaintiffs a fiduciary duty to "avoid[] actions that divert, dissipate, or unduly risk corporate assets that might otherwise be used to pay creditors claims.  This would include acts that involve self-dealing or the preferential treatment of creditors . . . ."  *Id.* at 1041.

- 15 -

578825v1

50.   In contravention of his fiduciary duty, Sorensen has engaged in conduct that has benefited himself and his family, Anchorage, and Blue Mountain at the expense of Plaintiffs and Koosharem's other creditors.  Rather than ensure Koosharem use its corporate assets to improve its financial footing for the benefit of all creditors, Sorensen has:

a.   Favored a sweetheart deal with Anchorage and Blue Mountain that allows Sorensen to maintain control of the Company and gives Sorensen a generous compensation package, including awards of stock options and restricted stock;

b.   Favored a deal with Anchorage and Blue Mountain that would pay First Lien Lenders only 80% recovery while obstructing a fully-financed competing offer that would pay First Lien Lenders a full cash recovery;

c.   Used his position at the Company to stymie efforts to sell the Company through a section 363 sale in bankruptcy that would maximize value for the Plaintiffs, who are among the Company's highest-ranking creditors, because of the attention his conduct at the Company may receive in such a bankruptcy proceeding;

d.   Inappropriately used the restructuring for his own financial and personal gain and advantages.

51.   Sorensen's actions have cost, and will continue to cost, Plaintiffs millions of dollars in lost value.  The specific amount of Plaintiffs' damages will be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully requests that this Court enter an Order:

a.   awarding the Plaintiffs relief on all the claims set forth herein;

- 16 -

578825v1

1    b.    finding Sorensen has breached the fiduciary duties he owes to

2  the Plaintiffs;

3    c.    awarding damages in an amount to be determined at a jury trial;

4    d.    awarding pre and post judgment interest at the rate allowed by

5  law;

6    e.    awarding attorneys' fees and costs; and

7    f.    awarding such other, further relief as the Court deems

8  appropriate.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                          - 17 -

28

578825v1

1    DATED: December 17, 2013

2

3                                     Eric D. Goldberg (Bar No. 157544)

Christine M. Pajak (Bar No. 217173)

4                                     STUTMAN, TREISTER & GLATT

PROFESSIONAL CORPORATION

5                                     1901 Avenue of the Stars, 12th Floor

Los Angeles, California 90067

6                                     Telephone: (310) 228-5600

Facsimile: (310) 228-5788

7                                     and

8                                     WILLKIE FARR & GALLAGHER LLP

9                                     Joseph G. Minias (*pro hac vice* to be filed)

Jennifer J. Hardy (*pro hac vice* to be filed)

10                                   Norman P. Ostrove (*pro hac vice* to be filed)

11

12                                   787 Seventh Avenue

New York, NY 10019

13                                   Telephone: (212) 728 8000

Facsimile: (212) 728 8111

14                                   *Co-Counsel for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27                                   - 18 -

28

**ORIGINAL**

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
### CENTRAL DISTRICT OF CALIFORNIA

BOWERY OPPORTUNITY FUND, L.P.; BOWERY )
INSTITUTIONAL OPPORTUNITY FUND, L.P.; )
PHOENIX CLO I LTD.; PHOENIX CLO II LTD.; )
PHOENIX CLO III LTD.; DSTAR LTD.; NAPIER PARK )
DISTRESSED DEBT OPPORTUNITY MASTER FUND )
LTD.; TELOS CLO 2006-1, LTD.; AND TELOS CLO )
2007-2, LTD., )
                                                   )
             *Plaintiff*                    )
              v.                     )
                                                   )
D. STEPHEN SORENSEN, an individual, )
                                                   )
            *Defendant*                )
                                                   )

Civil Action No. **CV13-09275**-JEM

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

    D. Stephen Sorensen                D. Stephen Sorensen
    3820 State St.                          4545 Via Esperanza
    Santa Barbara, CA 93105          Santa Barbara, CA 93110

    D. Stephen Sorensen                D. Stephen Sorensen
    4484 Via Esperanza               4531 Via Esperanza
    Santa Barbara, CA 93110          Santa Barbara, CA 93110

    A lawsuit has been filed against you.

    Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

    Eric D. Goldberg
    Christine M. Pajak
    STUTMAN, TREISTER & GLATT, P.C.
    1901 Avenue of the Stars, 12th Floor
    Los Angeles, California 90067

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: DEC 17 2013                                 _____
                                            *Signature of Clerk or Deputy Clerk*

1227

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____, a person of suitable age and discretion who resides there,

on *(date)* _____, and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____, who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____; or

☐ I returned the summons unexecuted because _____; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                          *Server's signature*

                                 _____
                                          *Printed name and title*


                                 _____
                                          *Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Bowery Opportunity Fund, L.P., *et al.*

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

D. Stephen Sorensen

**(b)** County of Residence of First Listed Plaintiff  **NY, NY**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  **Santa Barbara**
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**See Attachment**

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ **Excess of $75K**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Diversity (28 U.S.C. § 1332).  Breach of Fiduciary Duty.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **TORTS** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | **PERSONAL PROPERTY** | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☒ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | **BANKRUPTCY** | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 440 Other Civil Rights | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 441 Voting | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 442 Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 445 American with Disabilities-Employment | ☐ 790 Other Labor Litigation | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 791 Employee Ret. Inc. Security Act | |
| | | | ☐ 448 Education | | |

**FOR OFFICE USE ONLY:**   Case Number:   **CV13-09275**

CV-71 (11/13)
578827v.1

CIVIL COVER SHEET

Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes   ☒ No<br><br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes   ☒ No<br><br>If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | A PLAINTIFF?<br><br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br><br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | **Western** |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed **in this court** that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**   _Christine M. Pajak_   DATE: **December 17, 2013**

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# ATTACHMENT

I(c)   Attorneys for Plaintiffs Bowery Opportunity Fund, L.P.; Bowery Institutional Opportunity Fund, L.P.; Phoenix CLO I Ltd.; Phoenix CLO II Ltd.; Phoenix CLO III Ltd.; DStar Ltd.; Napier Park Distressed Debt Opportunity Master Fund Ltd.; Telos CLO 2006-1, Ltd.; And Telos CLO 2007-2, Ltd.:

Eric D. Goldberg (Bar No. 157544)
Christine M. Pajak (Bar No. 217173)
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 228-5600
Facsimile: (310) 228-5788

Joseph G. Minias  (*pro hac vice* to be filed)
Jennifer J. Hardy  (*pro hac vice* to be filed)
Norman P. Ostrove  (*pro hac vice* to be filed)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111